IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ULISES LOPEZ-SANCHEZ,**

      **Plaintiff,**

      v.                                                    CASE NO. 25-3035-JWL

**DAVID M. CHACKO, et al.,**

      **Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Ulises Lopez-Sanchez is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

**1. Nature of the Matter before the Court**

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the Lansing Correctional Facility in Lansing, Kansas. The Court granted Plaintiff leave to proceed in forma pauperis.

Plaintiff alleges that he lost all sight out of his left eye due to injections given by Dr. Chacko. (Doc. 1, at 2.) As Count I, Plaintiff claims medical malpractice and cruel and unusual punishment. *Id*. at 3. As Count II, Plaintiff alleges Fourth and Fourteenth Amendment violations, with his "state action claim" as support. *Id*. Plaintiff acknowledges that he brought a medical malpractice claim in state court that was dismissed in 2023. *Id*. at 4.

Plaintiff alleges that Defendants failed "to render proper timely medical treatments, medicines, operative procedures." (Doc. 1–1, at 3.) Plaintiff alleges that in November 2021, he submitted a request for a bottom bunk due to "increasing vision complications" and "experiencing dizziness, blurred vision, and eye pain." *Id*. at 4. Plaintiff requested an eye examination for his

1

left eye on December 6, 2021. *Id*. On December 22, 2021, Plaintiff submitted a medical request stating that his "blurred vision, eye pain was increasing noting that the eye drops given to [P]laintiff did not alleviate the injury complained of." *Id*. at 4–5. The medical staff informed Plaintiff that he had been scheduled to see an eye specialist. *Id*. at 5. On January 7, 2022, medical staff noted that Plaintiff could not see anything from his left eye. *Id*.

In January 2022, Plaintiff was taken from the El Dorado Correctional Facility to see a second eye specialist, who informed Plaintiff that the blood buildup in his eye needed to be drained. *Id*. Plaintiff alleges that on March 28, 2022, he was taken to the offices of Eye Specialists Associates, P.A., where Dr. Chacko "injected the Plaintiff's left eye." *Id*. Plaintiff alleges that on April 8, 2022, the "operative procedure was performed on Plaintiff's left eye" by Dr. Chacko, and "Plaintiff upon this date lost left eye vision totally." *Id*. at 6. Plaintiff alleges that on "June 10, 2022, Plaintiff's left eye was injected with alcohol" by Dr. Chacko. *Id*. Plaintiff claims that on June 21, 2022, Dr. Chacko "informed the Plaintiff that he fact [sic] had lost all vision in left eye and facts Dr. Chacko was sorry/apologetic." *Id*.

Plaintiff alleges that on December 20, 2022, he requested the recommended monthly eye injections, any type of pain medications due, and an eye patch. *Id*. at 7. Plaintiff states that he reminded "medical staff" that the eye injections were supposed to be administered monthly, not once every four months. *Id*.

Plaintiff alleges that the defendants' "lack of concerns or the remarkable inadequate disclosures" caused Plaintiff to decline treatments or procedures. *Id*. at 9. Plaintiff claims that defendants' negligence caused him to lose all sight from his left eye. *Id*. Plaintiff claims that before defendants started the treatments, he had vision in his left eye. *Id*.

Plaintiff names as defendants David M. Chacko, Eye Specialists Associates, P.A.; and Eye Specialists Associates, P.A.  Plaintiff seeks compensatory and punitive damages.  (Doc. 1, at 5.)

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988)(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

3

cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III.  DISCUSSION

### 1.  Statute of Limitations

Plaintiff brought these same claims in state court.  *See Lopez-Sanchez v. Centurion of Kansas, LLC,* Case No. BU-2023-CV-000053 (District Court of Butler County, Kansas).  Plaintiff filed his "Medical Malpractice/Medical Negligence Tort" petition on February 22, 2023.  Plaintiff named David M. Chacko as a defendant in his state case.  On December 1, 2023, the state court entered a Journal Entry of Dismissal Without Prejudice.  Regarding Defendant David M. Chacko, MD, the state court found that Plaintiff failed to effect proper service of process on Defendant Chacko and dismissed Plaintiff's action against him without prejudice.

In his state court malpractice petition, Plaintiff alleges that:

> Plaintiff began seeking medical treatment for his eye condition on approx. December 12, 2021.  Following a medical procedure performed on approx. April 8, 2022, plaintiff lost vision in his left eye and due to what plaintiff describes as medical malpractice/medical negligence/deliberate indifference to his serious medical needs, he is also losing vision in his right eye.  Plaintiff became reasonably aware of the extent of the injuries complained of in April 2022.

*Id.* at petition, at 2.

Plaintiff filed the instant § 1983 action on February 28, 2025.  The statute of limitations applicable to § 1983 actions is determined from looking at the appropriate state statute of limitations and tolling principles.[1]  *See Hardin v. Straub*, 490 U.S. 536, 539 (1989).  "The forum state's statute of limitations for personal injury actions governs civil rights claims under both 42

---

[1] Although the Kansas Supreme Court tolled the state statutes of limitations in response to the COVID-19 pandemic, it was reinstated prior to the events underlying the claims in this case. *See Korgan v. Estate of Hansen by and through Cramer*, 2022 WL 4465074, at *2–4 (D. Kan. Sept. 26, 2022) (finding that the statute of limitations was tolled from March 19, 2020 through April 14, 2021).  The tolling or suspension is set forth in Kansas Supreme Court Administrative Order 2020-PR-016, as amended by Kansas Supreme Court Administrative Order 2020-PR-32.  The AO reinstated the statute of limitations effective April 15, 2021.

U.S.C. § 1981 and § 1983. . . . In Kansas, that is the two-year statute of limitations in Kan. Stat. Ann. § 60–513(a)." *Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch.*, 465 F.3d 1184, 1188 (10th Cir. 2006) (citations omitted).

While state law governs the length of the limitations period and tolling issues, "the accrual date of a § 1983 cause of action is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, the claim accrues "when the plaintiff has a complete and present cause of action." *Id.* (internal quotation marks and citation omitted). In other words, "[a] § 1983 action accrues when facts that would support a cause of action are or should be apparent." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (internal quotation marks and citation omitted), *cert. denied* 549 U.S. 1059 (2006). A district court may dismiss a complaint filed by an indigent plaintiff if it is patently clear from the allegations as tendered that the action is barred by the statute of limitations. *Id*. at 1258–59; *see also Jones v. Bock*, 549 U.S. 199, 214 (2007); *Hawkins v. Lemons*, No. 09-3116-SAC, 2009 WL 2475130, at *2 (D. Kan. Aug. 12, 2009).

It plainly appears from the face of the Complaint that Plaintiff's claims are subject to dismissal as barred by the applicable two-year statute of limitations. Plaintiff's alleged violations occurred in April 2022. It thus appears that any events or acts of Defendants taken in connection with Plaintiff's claims took place more than two years prior to the filing of Plaintiff's Complaint and are time-barred. *See Fratus v. Deland*, 49 F.3d 673, 674–75 (10th Cir. 1995) (district court may consider affirmative defenses *sua sponte* when the defense is obvious from the face of the complaint and no further factual record is required to be developed).

"While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute." *Cash v. City of Durant*, 2024 WL 1573947,

at *3 (10th Cir. 2024) (unpublished) (citing *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)). Plaintiff has not alleged facts suggesting that he would be entitled to statutory or equitable tolling. *See Caballero v. Wyandotte Cty. Sheriff's Dep't*, 2018 WL 5311883, at n.1 (D. Kan. 2018) ("If this were a petition for a writ of habeas corpus rather than a civil rights suit, the limitation period would be tolled while Plaintiff was pursing his state remedies. With a § 1983 action, Plaintiff must have exhausted all *administrative* remedies provided by the Wyandotte County Jail before filing suit; state court exhaustion is not required, nor does it toll the limitation period.").

### 2. Failure to State a Claim

Plaintiff states that he is bringing a claim under the Fourth and Fourteenth Amendments without any factual support. A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall*, 935 F.2d at 1110. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Plaintiff fails to state a claim under the Fourth and Fourteenth Amendments.

Regarding his claim based on medical malpractice and deliberate indifference, his factual allegations suggest both that he lost sight in his left eye before seeing Dr. Chacko ("[o]n January 7, 2022, medical staff noted that Plaintiff could not see anything from his left eye"), and that before defendants started "the treatments," he had vision in his left eye. Plaintiff does not elaborate on the conflicting factual allegations. Plaintiff suggests that "inadequate disclosures" caused Plaintiff to decline treatments or procedures, but he gives no detailed factual allegations regarding what disclosure were made, who made them, when they were made, or what treatments or procedures

Plaintiff declined. Plaintiff's allegations show that he either totally lost or was losing vision in his eye prior to seeing Dr. Chacko, Dr. Chacko injected something in his eye, and he currently has no vision in his eye. He gives no factual support to suggest the doctor was deliberately indifferent or even negligent. Furthermore, the "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

### 3. Eye Specialists Associates, P.A.

Plaintiff names as a defendant "David M. Chacko acting as Eye Specialists Ass., P.A.," and also names as a defendant "Eye Specialists Ass., P.A. c/o David M. Chacko, M.D." (Doc. 1, at 1–2.) Plaintiff claims that on March 28, 2022, he "was taken to the offices of Eye Specialists Ass., P.A., 2214 Canterbury Drive, Suite 312, Hays, Kansas 67601[,] where David M. Chacko, M.D. injected the Plaintiff's left eye" and that "David M. Chacko's office/or place of business is located at 655 North Woodlawn, Wichita, Kansas 67200." (Doc. 1–1, at 5.) It is unclear how Dr. Chacko is affiliated with Eye Specialists, in light of the two different addresses. Dr. Chacko's motion to dismiss Plaintiff's state court action states that "Dr. Chacko does not work for Eye Specialists Associated, PA." *See Lopez-Sanchez v. Centurion of Kansas, LLC,* Case No. BU-2023-CV-000053 (District Court of Butler County, Kansas) (Defendant David M. Chacko, M.D.'s Motion to Dismiss filed August 25, 2023).

In the Tenth Circuit, "to hold a corporation liable under § 1983 for employee misconduct, a plaintiff must demonstrate the existence of the same sort of custom or policy that permits imposition of liability against municipalities under *Monell v. Department of Social Services*, 436 U.S. 658, 694 . . . (1978)." *Wishneski v. Andrade*, 572 F. App'x 563, 567 (10th Cir. 2014)

8

(unpublished) (citations omitted). A corporation may not be held liable based upon respondeat superior because "vicarious liability is inapplicable to . . . § 1983 suits." *Rascón v. Douglas*, 718 F. App'x 587, 589–90 (10th Cir. 2017) (unpublished) (quoting *Iqbal*, 556 U.S. at 676); *see also Spurlock v. Townes*, 661 F. App'x 536, 545 (10th Cir. 2016) (unpublished); *Green v. Denning*, 465 F. App'x 804, 806 (10th Cir. 2012) (unpublished) ("An entity 'cannot be held liable *solely* because it employs a tortfeasor—or, in other words, [it] cannot be held liable under § 1983 on a respondeat superior theory.'") (citation omitted); *Williams v. Correct Care Sols.*, No. 19-3075-SAC, 2019 WL 2005920, at *2 (D. Kan. May 7, 2019); *Jefferson v. Aramark Corr. Servs.*, Case No. 17-3161-SAC, 2017 WL 6557419, at *2 (D. Kan. Dec. 22, 2017); *Livingston v. Correct Care Sols.*, Case No. 07-3256-SAC, 2008 WL 1808340, at *1–2 (D. Kan. Apr. 17, 2008) (stating that "[a] policy is a formal statement by the private corporation" and "[a] custom is a persistent, well-settled practice of unconstitutional misconduct by employees that is known and approved by the corporation.").

Plaintiff must allege facts showing a policy or a custom of the company that caused his injury. Plaintiff has failed to allege such facts and has failed to show how Eye Specialists Associates, P.A., was involved in his claims.

### 4. Exhaustion

The Court notes that the state court found that Plaintiff failed to exhaust his administrative remedies. An inmate is required by the Prison Litigation Reform Act ("PLRA") to exhaust all available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court") (citations omitted). "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 219 (2007) (stating that "the benefits of exhaustion include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record") (citations omitted).

This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it." *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004); *Little*, 607 F.3d at 1249. A prison or prison system's regulations define the steps a prisoner must take to properly exhaust administrative remedies and a prisoner "may only exhaust by properly following all of the steps laid out" therein. *Little*, 607 F.3d at 1249 (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

In a suit governed by the PLRA, failure to exhaust is an affirmative defense and the defendant has the burden of proof regarding exhaustion of administrative remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). "Although a defendant bears the burden of 'proving that the plaintiff did not [exhaust his] administrative remedies,' once the defendant has carried that burden, 'the onus falls on the plaintiff to show that remedies were unavailable to him.'" *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (alteration in original) (citing *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)).

Plaintiff references his state court action, stating that "the states remedies have plausibly been exhausted." (Doc. 1–1, at 3.) However, the prison's regulations define the steps a prisoner must take to properly exhaust administrative remedies and a prisoner "may only exhaust by properly following all of the steps laid out" therein. *Little*, 607 F.3d at 1249 (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). It appears that Plaintiff has failed to follow those steps.

The issue of Plaintiff's failure to exhaust his available administrative remedies prior to filing his lawsuit must be determined before reaching the merits of his lawsuit. *Little*, 607 F.3d at 1249 ("unexhausted claims cannot be brought in court") (citation omitted); *see also Jernigan*, 304 F.3d at 1032 (an inmate who does not complete the grievance process is barred from pursuing a §1983 claim). It appears that Plaintiff failed to exhaust available administrative remedies. Under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court." *Little*, 607 F.3d at 1249 (citations omitted). Accordingly, Plaintiff's Complaint is subject to dismissal without prejudice for failure to exhaust administrative remedies.

## IV. Response Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the

reasons stated herein.  Failure to respond by the deadline may result in dismissal of this action without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **April 18, 2025,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated March 19, 2025, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**